UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
HAROLD A. FLORES,

                Plaintiff,                       16 Civ. 7207 (   )

     -against-                              **COMPLAINT**

ENTERGY NUCLEAR OPERATIONS, INC.,
WAYNE GRIFFIN and DANIEL GAGNON,          **Jury Trial Demanded**

                Defendants.
-------------------------------------------------------x

       Plaintiff, HAROLD A. FLORES, by and through his attorneys, The Bellantoni Law Firm, PLLC for his complaint states as follows:

## NATURE OF THE ACTION

       1.      This is an action for, *inter alia,* economic, compensatory and punitive damages and attorney's fees, proximately resulting from defendants' unlawful conduct in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e, *et seq.* and New York Executive Law §296, *et seq.*

## JURISDICTION

       2.      The Court's jurisdiction over the plaintiff's federal claims is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343 and supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 USC § 1367.  Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission premised on retaliation and being "regarded as" disabled in violation of, *inter alia,* Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e, *et seq.* The United States Department of Justice, Civil Rights Division duly issued to the plaintiff a Notice of Right to Sue dated June 17, 2016.

## THE PARTIES

3.      Plaintiff, HAROLD A. FLORES, (hereinafter "Plaintiff") is a domiciliary of the State of New York.

4.      Plaintiff is an African American whose race is identified as "black".

5.      At all times relevant to this complaint, Plaintiff was employed by Defendant Entergy Nuclear Operations, Inc. as a Nuclear Security Officer at the Indian Point Nuclear Facility ("Indian Point").

6.      Defendant, ENTERGY NUCLEAR OPERATIONS, INC., (hereinafter "Entergy") is a foreign business corporation that regularly engages in business in Westchester County, New York.

7.      Entergy is the licensed operator of the nuclear power generating units at the Indian Point Nuclear Facility ("Indian Point") in Buchanan, New York, located in the Northern Counties.

8.      Defendant, DANIEL GAGNON ("Gagnon"), at all times relevant herein was, and currently is, employed by Entergy as the Security Manager at Indian Point.  Gagnon was, at all times relevant herein, Plaintiff's supervisor.

9.      As the Security Manager, Gagnon had final decision making authority to conduct and/or direct Fact Findings against Plaintiff, discipline Plaintiff, and generally affect the terms and conditions of Plaintiff's employment.

10.     Defendant, WAYNE GRIFFIN ("Griffin"), at all times relevant herein, was employed by Entergy as the Director of Access Control at the Indian Point Nuclear Plant.

11.     As the Director of Access Control, Griffin had authority to compel Entergy

Plaintiff to submit to drug and/or alcohol testing and to affect the terms and conditions of

Plaintiff's employment.

## FACTUAL ALLEGATIONS

12.     When initially hired as a Nuclear Security Officer, Plaintiff was informed by

Entergy employees that he was required to apply for and obtain a New York State Pistol License

as a condition of his employment as a Nuclear Security Officer.

13.     In accordance with the terms of his employment, Plaintiff applied for, and

obtained, a New York State Pistol License restricted to "Employment Carry".

14.     Plaintiff's employment performance at Entergy was, at all times, satisfactory.

15.     On or about May 13, 2013, Plaintiff submitted an Affidavit in support of co-

worker Kendric Lever's ("Mr. Lever") lawsuit against Entergy alleging racial discrimination.

16.     Like Plaintiff, Mr. Lever is also African American whose race is identified as

"black".

17.     On May 16, 2013, without warning and for no lawful purpose, Entergy terminated

Plaintiff's employment.

18.     Entergy terminated Plaintiff's employment in retaliation for Plaintiff's protected

activity, to wit, opposing Entergy's discriminatory practices toward, *inter alia*, Mr. Lever.

19.     Plaintiff's termination was not based on his work performance or any other lawful

purpose.

20.     As a consequence of Plaintiff's termination, he was required to surrender his New

York State Pistol License ("Pistol License"), which was restricted to "Employment Carry".

21.     Plaintiff's union filed a grievance alleging wrongful termination.

22.     As a resolution to the grievance, Plaintiff entered into a Settlement Agreement with Entergy on January 31, 2014 (the "Agreement").

23.     Under the terms of the Agreement, Entergy agreed to rehire Plaintiff conditioned on Plaintiff (1) giving up his right to seek reimbursement for back wages; and (2) applying for and obtaining a New York State Pistol License before July 1, 2014.

24.     Entergy induced Plaintiff to waive his right to seek recovery of back wages as a result of his unlawful termination by falsely representing that a New York State Pistol License was required to perform the duties and responsibilities of the position of Nuclear Safety Officer.

25.     Entergy falsely and misleadingly induced Plaintiff to waive his right to reimbursement for back wages.

26.     Plaintiff entered into the Agreement based on Entergy's false and misleading representations that he was required to obtain a New York State Pistol License in order to be employed as a Nuclear Security Officer at IPEC.

27.     At the time that Entergy entered into the Agreement, Nuclear Security Officers were not required to possess a New York State Pistol License in order to lawfully possess and/or use firearms in the course of their duties – a fact known to Entergy.

28.     Since 2009, the Nuclear Regulatory Commission ("NRC") regulations have pre-empted state firearms laws and pistol licensing requirements.

29.     At the time that Entergy entered into the Agreement, a pistol license was not required for Indian Point Nuclear Security Officers to possess or use firearms in the course of their duties.

30.     Prior to July 1, 2014, Indian Point Nuclear Security Officers were not required to possess a New York State Pistol License to possess and/or use a firearm in the course of their duties.

31.     After entering into the Agreement, Plaintiff timely submitted an application to the Westchester County Department of Public Safety for a New York State pistol license restricted to "Employment Carry".

32.     At the time that Entergy entered into the Agreement, Entergy knew that the application process for a pistol license in Westchester County routinely takes longer than 6 months, and generally takes 9-12 months before a decision is rendered by a licensing officer.

33.     Through no fault of Plaintiff's, a decision on his Pistol License application was not rendered before July 1, 2014.

34.     Plaintiff's pistol license was ultimately granted by the Honorable Susan Cacace, a Westchester County Licensing officer, on July 3, 2014 – 2 days after the date by which Plaintiff was required to secure a New York State pistol license under the terms of the Agreement.

35.     Entergy refused to reemploy Plaintiff because of his inability to secure a pistol license before July 1, 2014.

36.     In spite of the fact that a New York State Pistol License was not required for Plaintiff to be reemployed as a Nuclear Security Officer, Entergy refused to reinstate him.

37.     Entergy refused to reemploy Plaintiff in retaliation for his assistance to Mr. Lever in opposing Entergy's discriminatory acts.

38.     Plaintiff was forced to retain an attorney to apply to Judge Cacace for an amendment of her prior Order.

39.     Judge Cacace amended her Order granting Plaintiff's pistol license, *nunc pro tunc,* to June 30, 2014.

40.     Finally, and in and around October 2014, Entergy agreed to rehire Plaintiff as a Nuclear Security Officer.

41.     Upon Plaintiff's return to work in October <u>2014</u>, Defendant Griffin required him to submit to a drug test based on an April <u>2013</u> arrest (prior to his termination) wherein Plaintiff had been falsely charged with misdemeanor possession of a controlled substance.

42.     The charge against Plaintiff had been dismissed in its entirety and sealed.

43.     The result of Plaintiff's drug test indicated negative for the presence of drugs.

44.     Entergy, through Defendant Griffin, required Plaintiff to "engage in a psycho-educational program…show documented compliance weekly...[attend] the intensified random follow-up testing program <u>over the next three years</u>…" (emphasis added).

45.     Entergy, through Defendant Griffin, continued to require Plaintiff to submit to drug testing despite for a charge that was *dismissed in its entirety*.

46.     Since October 2014, Plaintiff has submitted to numerous drug tests as required by Entergy and carried out at the direction of Defendants Griffin and Gagnon.

47.     Each of Plaintiff's drug tests has been negative for the presence of drugs.

48.     Entergy, through Defendant Griffin, has never rescinded the requirement that Plaintiff regularly submit to drug testing.

49.     When Plaintiff is required to submit to a drug test, his supervisors routinely make the request openly, publicly, and in the presence of his peers.

50.     As a result, Plaintiff has been subjected to ridicule and harassment and teased for being a drug addict and/or having a drug problem.

51.     Because of Entergy's treatment, through Defendants Griffin and Gagnon, as Plaintiff's co-workers call him names and make comments characterizing him as being a drug addict and/or alcoholic.

52.     Griffin's continued requirement that Plaintiff submit to routine drug testing is in retaliation for his protected activity.

53.     The continued requirement that Plaintiff submit to routine drug testing, conducted through Defendants Griffin and Gagnon, is discriminatory conduct based solely on an unproven allegation, e.g., his arrest.

54.     Entergy, through Defendants Griffin and Gagnon, regarded Plaintiff as disabled, to wit, being an alcoholic and/or drug addict, as borne out by the continued requirement that Plaintiff submit to routine drug testing.

55.     Entergy's retaliatory conduct, carried out by, and/or at the direction of, Defendants Griffin and Gagnon has caused harm to Plaintiff's personal and professional reputation.

56.     Plaintiff's managers and supervisors, including Gagnon, are aware of his co-workers' harassment but condone the behavior by taking no action to reduce or eliminate it.

57.     Neither Griffin nor Gagnon have any o legal basis for requiring Plaintiff to submit to drug and/or alcohol testing as he does not use, nor is he addicted to, illegal drugs.

58.     Since October 2014, Plaintiff has been subjected to groundless and harassing Fact Findings and disciplinary action at the direction of, and/or with the knowledge and approval of Gagnon.

59.     Entergy's repeated Fact Findings against Plaintiff are in retaliation for his having engaged in protected activity.

60.    Entergy, through Gagnon and/or Plaintiff's other managers, retaliated against Plaintiff by rescheduling the date for his mandatory physical examination for a time when they knew that Plaintiff was away on vacation.

61.    Entergy employees, with Gagnon's knowledge and approval, unreasonably delayed Plaintiff's mandatory requalification test alleging that "management was not available" to administer the test.

62.    Entergy employees, with the knowledge and/or approval of Gagnon, punitively reassigned Plaintiff to the day shift from his permanently scheduled night shift.

63.    Gagnon and/or Griffin refused to provide documentation to Plaintiff that was provided to every other Security Officer in and around August 2014 that allegedly eliminated the purported requirement that Nuclear Security Officers possess a New York State Pistol License.

64.    In December 2015, Gagnon caused Plaintiff to be suspended for three (3) days without pay, without any lawful basis, and in retaliation for his protected activities.

65.    During a plant shut down, Entergy refused to allow Plaintiff to use accrued time off in continued retaliation for his protected activities.

66.    While denying Plaintiff the use of his accrued time off, Plaintiff's supervisors, with the knowledge and approval of Gagnon, allowed 8 other Security Force employees call out.

67.    None of the other 8 employees engaged in protected activity, to wit, opposing and/or assisting other(s) in the opposition of Entergy's discriminatory practices.

68.    At all times relevant herein, Defendants Gagnon and Griffin were employees of Entergy, acting within the scope of their respective positions.

69.    Entergy is vicariously liable for the acts and omissions of its employees, including without limitation, Defendants Griffin and Gagnon under the theory of *respondeat superior.*

8

70.     Plaintiff has been caused to suffer, *inter alia,* economic damages, embarrassment, harm to his professional and personal reputation, emotional pain and suffering and the physical manifestations of the same.

## AS AND FOR A FIRST CAUSE OF ACTION

71.     Repeats and realleges as if set forth in their entirety paragraphs "1" through "70".

72.     Under the theory that Entergy is liable to the plaintiff for retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e, *et seq.*

## AS AND FOR A SECOND CAUSE OF ACTION

73.     Repeats and realleges as if set forth in their entirety paragraphs "1" through "72".

74.     Under the theory that Defendants Griffin and Gagnon are liable to Plaintiff for retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e, *et seq.*

## AS AND FOR A THIRD CAUSE OF ACTION

75.     Repeats and realleges as if set forth in their entirety paragraphs "1" through "74".

76.     Under the theory that Entergy Nuclear Operations, Inc. is liable to Plaintiff for violations of the Americans With Disabilities Act, 42 U.S.C. §12111, *et. seq.*

## AS AND FOR A FOURTH CAUSE OF ACTION

77.     Repeats and realleges as if set forth in their entirety paragraphs "1" through "76".

78.     Under the theory that Entergy Nuclear Operations, Inc. is liable to Plaintiff for retaliation and discrimination in violation of New York Executive Law §296, *et. seq.*

## AS AND FOR A FIFTH CAUSE OF ACTION

79.     Repeats and realleges as if set forth in their entirety paragraphs "1" through "78".

80.     Under the theory that Defendants Griffin and Gagnon are liable to Plaintiff for retaliation and discrimination in violation of New York Executive Law §296, *et. seq.*


WHERFORE, a Judgment is respectfully requested:

- Awarding against all defendants economic damages with statutory interest;

- Awarding against all defendants compensatory damages as the jury may determine;

- Awarding against all defendants punitive damages as the jury may determine;

- Awarding against all defendants costs, disbursements and reasonable attorney's fees; and

- Granting such other and further relief as the Court deems just and proper.

Dated: September 15, 2016
            Scarsdale, New York

                                        THE BELLANTONI LAW FIRM, PLLC
                                        *Attorneys for Plaintiff, Harold Flores*


By:     _____
            Amy L. Bellantoni (AB3061)
            2 Overhill Road, Suite 400
            Scarsdale, New York 10583
            (914) 367-0090 (t)
            (914) 367-0095 (f)